IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JON SUTTON, )
 )
        Plaintiff, )
 )
 ) Case No. CIV-20-028-JFH-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Jon Sutton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 39 years old at the time of the ALJ's decision. He has a high school education and past relevant work as a motorcycle mechanic. Claimant alleges an inability to work beginning on September 1, 2013, due to limitations resulting from bipolar disorder, degenerative disc disease of the lumbar spine, major depression, neuropathy, chronic and severe pain, and asthma.

## Procedural History

On May 17, 2018, Claimant protectively filed an application for a period of disability and disability insurance benefits pursuant to Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the

Social Security Act. His applications were denied initially and upon reconsideration. On August 12, 2019, ALJ Elisabeth McGee conducted a hearing in Fort Smith, Arkansas, at which Claimant was present and participated. On October 28, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on December 11, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ: (1) erred when assessing his mental RFC; (2) erred when assessing his physical RFC; (3) failed to order a consultative examination for both his physical and mental impairments; and (4) erred when evaluating Claimant's symptoms.

### RFC Assessment

In her decision, the ALJ found Claimant suffered from severe impairments of bipolar and schizoaffective disorder, major depressive disorder with and without psychotic features,

degenerative disc disease of the lumbar spine with disc bulge and multilevel small Schmorl's nodes, neuropathy, and asthma. (Tr. 16). She determined Claimant could perform light work, except he could have no concentrated exposure to dust, fumes, or other pulmonary irritants, and he could perform unskilled work with occasional interaction with supervisors and co-workers, but no contact with the general public other than incidental contact. (Tr. 17-18).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of small products assembler, inspector packer, and bench assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 23-24). As a result, the ALJ concluded Claimant was not under a disability from September 1, 2013, through the date of the decision. (Tr. 24).

Claimant contends the ALJ failed to link the record evidence to show how the limitations included in the mental RFC accounted for his severe mental impairments. Claimant asserts the ALJ failed to fully account for evidence indicating the severity of his mental impairments, *e.g.*, Claimant's prior suicide attempt, severe recurrent major depression in April of 2015, suicidal ideation in April of 2018, hallucinations in May of 2018, hearing voices (including voices telling him to hurt people in August of 2018), the opinion by Dr. Jack Weaver, M.D., from October of 2018 (he

5

opined Claimant should be granted disability because of the progressive nature of his physical and mental health issues), suicidal and homicidal ideations in February of 2019 and hospitalization, and hearing voices in February of 2019.

The ALJ discussed the evidence pertaining to Claimant's mental impairments in detail, including limitations based upon such impairments in the RFC for unskilled work and limiting Claimant to occasional interactions with supervisors and co-workers, but no contact with the general public other than incidental contact. (Tr. 17-23). She noted Claimant requested an increase in his dosage of medication for his depression in April of 2015 (Tr. 19, 385) and his report of anxiety and depression in October of 2015. (Tr. 19, 506). Claimant reported in October of 2015 that he had not undergone inpatient psychiatric treatment, but he had attempted suicide as a teenager. His wife indicated he had a "short fuse" and anger issues. Claimant was prescribed medication and in the following months, he reported sleeping better, his medication management was good, his temper was better, and he was not overly sedated. (Tr. 19, 510, 513). In May of 2016, Claimant indicated he became nervous around a lot of people and had family stressors. (Tr. 19, 520). From February of 2017 through January of 2018, although family stressors continued for Claimant, and he was sometimes irritable, he reported a stable mood. (Tr. 19, 532, 536, 544).

The ALJ also discussed Claimant's inpatient admission at Wagoner Community Hospital in April of 2018, due to homicidal ideations toward his wife and hallucinations of burning down his house with his wife and children inside. Claimant's urine drug screen was positive for benzodiazepines and opiates. He was prescribed Abilify and Tegretol which helped stabilize him, and it was recommended that his hydrocodone use be "tapered down." (Tr. 20, 324-34). After his inpatient hospital stay, Claimant followed up at Stigler Health and Wellness in May of 2018. Recounting his hospital stay, Claimant indicated he was detoxing from oxycodone and morphine and experienced hallucinations telling him to burn down his house and everyone in it. He reported no current suicidal or homicidal ideations, and that he was "fired" from pain management because he rescheduled an appointment twice. He denied current hallucinations, described his mood as "pretty good now," and stated he mowed the yard the previous day and enjoyed it. (Tr. 20, 579-82). Claimant, however, reported in August of 2018, he was "hearing voices and seeing things," but he was fighting against them. He stopped taking his Abilify because it caused "jitters," and his medication was changed, as he indicted Seroquel and Wellbutrin worked best for him. (Tr. 20, 583-84).

Claimant again required inpatient mental health care in February of 2019, reporting suicidal ideation and homicidal ideation toward his ex-wife. He was assessed with major depressive

7

disorder (recurrent, severe, with psychotic symptoms). He was discharged in calm and stable condition, having been counseled in coping skills and dealing with triggers, including his family. (Tr. 20, 499-501). At a follow-up visit a few days later, he reported his new medication was helping, although he continued to see things and hear voices. He denied suicidal or homicidal ideations. (Tr. 20, 587). In March of 2019, Claimant went back on Abilify. He did not hear voices or see things, but he did have some suicidal and homicidal ideations. (Tr. 20, 592). In April of 2019, Claimant still heard voices and saw things, and he thought he was possessed. He was, however, able to relax by listening to music and by being by himself. (Tr. 20, 596).

The ALJ further discussed the opinion evidence related to Claimant's mental impairments. She noted Dr. Weaver's statement from October of 2018, wherein he stated Claimant should be given complete disability because of his progressive prognosis and psychiatric health. (Tr. 22, 493). She determined Dr. Weaver's findings were not persuasive because the objective basis and rationale for his extreme assessment that Claimant could not work was not provided, his findings were inconsistent with and unsupported by the longitudinal and objective medical evidence of record, and the issue of whether Claimant was disabled rested with the Commissioner. (Tr. 22).

She also discussed the opinions of the state agency consultants regarding Claimant's mental impairments and mental RFC, finding their opinions persuasive because they were consistent with and supported by the longitudinal and objective medical evidence of record. They determined Claimant had severe physical and mental impairments that restricted him to light work at an unskilled level. The state agency consultants determined Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. (Tr. 22, 72-74, 86-87, 100-02, 115-17).

There is no error in the ALJ's mental RFC assessment. The ALJ discussed the evidence of record pertaining to Claimant's mental impairments, including the evidence specifically identified by Claimant in his briefing. Claimant fails to assert what additional mental limitations should have been included in the RFC assessment by the ALJ. The ALJ also discussed the opinion of Dr. Weaver, and, among other reasons, noted it addressed the issue of disability, which is reserved for the Commissioner. *See Balthrop v. Barnhart*, 116 Fed. Appx. 929, 932-33 (10th Cir. 2004) (finding an opinion couched as conclusive on an issue reserved to the Commissioner is not a medical opinion entitled to controlling weight analysis or any special significance).

Claimant further argues the evidence supported more severe limitations associated with the ALJ's assessment of the "B Criteria" of the mental health listings at step three, which required a more detailed work-related assessment for Claimant's mental RFC. Specifically, Claimant argues the evidence supported more severe findings by the ALJ.

The ALJ discussed the evidence related to each of the areas of functioning in her step-three findings. She found Claimant was moderately limited in understanding, remembering, and applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing himself. (Tr. 17). Consistent with Social Security Ruling 96-8p, she also noted that "[t]he limitations identified in the 'paragraph B' criteria [were] not a [RFC] assessment but [were] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,] [and] [t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process require[d] a more detailed assessment." She noted that the "[RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 17). *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Claimant does not challenge the ALJ's step two or three findings, but only challenges the ALJ's findings regarding the areas of functioning to the extent more severe limitations should

have been included in Claimant's RFC. He asserts that even based upon the ALJ's moderate findings, when assessing his mental RFC, the ALJ was required to assess Claimant's ability to focus attention on work activities and stay on task and his ability to regulate his emotions, control behavior, and maintain his well-being in a work setting. However, an ALJ can account for mental limitations of functioning by limiting a claimant to certain types of work activity. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("We have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity."), citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work.").

In the hypothetical to the VE, the ALJ indicated Claimant could perform unskilled work, including simple tasks, simple instructions, and simple work-related decisions. She also limited Claimant to occasional interactions with supervisors and co-workers and to no interaction with the general public other than incidental contact. The VE testified that with a limitation to light work and the mental limitations included by the ALJ, Claimant could not perform his past work, but he could perform the jobs of

small product assembler, inspector packer, and bench assembler. (Tr. 60-61). There is no error in the mental RFC assessment, as it is supported by substantial evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (noting a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence).

Claimant next argues the ALJ erred when finding he had the physical RFC to perform light work. He focuses on two findings from examinations in April and July of 2019, wherein it was noted during the examination that Claimant had difficulty staying in one position for long periods, had to stand up sometimes to relive his back pain from sitting, and had problems sitting because of physical pain. (Tr. 641, 656).

The ALJ discussed the evidence of Claimant's physical impairments in the decision. Claimant received treatment for complaints of low back pain and asthma. Claimant reportedly injured his back prior to 2012, when he caught a motorcycle when it started to fall on him. Lumbar and left hip X rays were normal in March of 2012. (Tr. 19, 364). In March of 2014, Claimant's MRI of his lumbar spine indicated degenerative disc disease at L5-S1 with symmetric left-sided disc bulge, mild left neural foraminal stenosis, mild degenerative endplate marrow change at L2-3, and multilevel small Schmorl's nodes. (Tr. 19, 314-15, 381). An MRI of Claimant's lumbar spine in February of 2017 was unchanged from his prior MRI, showing L5-S1 degenerative disc disease. (Tr. 19, 311-12). During an

12

examination in February of 2018, Claimant was observed to be in no acute distress, and a physical examination revealed a normal range of motion and strength in his upper and lower extremities, with bilateral lumbar tenderness. (Tr. 19, 344). He was assessed with neuropathy in April of 2018. (Tr. 20, 341-43). In December of 2018, Claimant had a normal range of motion and strength in his upper and lower extremities bilaterally. (Tr. 612). It was noted in February of 2019 that Claimant did not have back, muscle, or joint pain, and upon examination, he exhibited a normal range of motion, normal strength, no tenderness, and no swelling. (Tr. 635, 637). The exact findings were noted again in July of 2019. (Tr. 627, 629).

In addition to noting his normal examination findings, the ALJ relied upon Claimant's unchanged MRI from March of 2014 to February of 2017, and his conservative treatment for his back pain, primarily through medication. She noted that although Claimant had sought consultations for surgery, there was no recommendation in the record. She also discussed that Claimant was assessed with neuropathy in April of 2018 based upon his physical complaints, but he had not undergone nerve conduction studies and his physical examination was otherwise normal. (Tr. 21). The ALJ also relied upon the opinions of the state agency consultants, who determined Claimant could perform light work. (Tr. 22, 71-72, 84-85, 98-100, 113-15). She determined that based upon the evidence of record,

13

Claimant's physical limitations were accommodated by an RFC for light work, and she included restrictions for pulmonary irritants related to Claimant's asthma. (Tr. 21). There is no error in the ALJ's physical RFC determination, as it is supported by substantial evidence. *See Lax*, 489 F.3d at 1084.

### Duty to Develop the Record

Claimant argues the ALJ failed to develop the record by not ordering mental and physical consultative examinations or recontacting Dr. Weaver regarding his opinion that Claimant was disabled. The ALJ "'bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008), quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). This responsibility involves "obtaining pertinent, available medical records which come to [the ALJ's] attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).

An ALJ has broad latitude when deciding whether to order a consultative examination. *Hawkins*, 113 F.3d at 1166, citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] . . . When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the

14

responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167 (citations omitted). When a claimant is represented by counsel, however, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*

At the hearing on August 12, 2019, the ALJ discussed the exhibits in the record with Claimant's counsel. Claimant's counsel had no objection to the records being admitted into evidence, and the ALJ made them part of the record for consideration. (Tr. 33). Claimant's counsel did not request a consultative examination during the hearing, nor did she suggest that the ALJ recontact Dr. Weaver. The Court finds no error by the ALJ regarding her duty to develop the record.

## Evaluation of Symptoms

Claimant further argues the ALJ's RFC determination was improper because she failed to properly evaluate his symptoms. He contends he had a long and steady work history prior to his injury, numerous records showed he suffered from pain in his left leg, hip, and his low back, and he had a strong longitudinal record of

15

seeking medical care, even though he lacked insurance, which limited his ability to undergo certain tests.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ summarized Claimant's testimony and the medical evidence of record in detail. (Tr. 18-22). She discussed Claimant's physical impairments, noting conservative treatment, and his mental impairments, noting that his functional limitations were less than marked and the alleged severity and limiting effects from his impairments were not "wholly" supported, as the medical

16

evidence was "only partially consistent" with Claimant's complaints. She found that Claimant's "reported limited daily activities [were] considered to be outweighed by the other factors," as his limited activities could not be objectively verified, and the medical evidence did not support such a degree of limitation. (Tr. 21-22). The ALJ found the statement from Claimant's father and Claimant's testimony regarding his disabling impairments lacked support from the objective medical evidence and were inconsistent with the longitudinal medical record. (Tr. 22). The ALJ relied upon appropriate factors in evaluating Claimant's statements. This Court finds no error in the ALJ's analysis of Claimant's subjective statements.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 27th day of January, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE